# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TONY E. JOHNSON, SR.,      )
                                    )
          Plaintiff,         )
                                    )
           v.                 )         1:17CV204
                                    )
NANCY A. BERRYHILL,        )
Acting Commissioner of Social     )
Security,                       )
                                    )
                                    )
          Defendant.      )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tony E. Johnson, Sr., seeks review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on April 22 and 23, 2013, alleging a disability onset date of May 10, 2010. (Tr. 238-245.) The applications were denied initially and again upon reconsideration. (*Id.* at 136-139, 150-52, 154-56.) A hearing was then held before an Administrative Law Judge ("ALJ") at which Plaintiff, his attorney, and a vocational expert ("VE") were present. (*Id.* at 37-68.) On November 9, 2015, the ALJ determined that

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry p.)

Plaintiff was not disabled under the Act. (*Id.* at 21-31.) On January 10, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "[I]n reviewing for substantial evidence, [the Court] do[es] not re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] Here, the ALJ first

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several

determined that Plaintiff had not engaged in substantial gainful activity since his amended onset date of May 10, 2010. (Tr. 23.) The ALJ next found that Plaintiff suffered from the following severe impairments: degenerative disc disease, chronic pain secondary to left paracentral protrusion at L4-L5, congestive heart failure, obesity, and antisocial personality disorder. (*Id.* (citing 20 C.F.R. 404.1520(c), 416.920(c)).) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one listed in Appendix 1. (*Id.* at 25.)

Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (*Id.* at 26-29.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a limited range of light work as defined in 20 CFR 404.1567(c) and 416.967(c). (*Id.* at 26.) Specifically, the ALJ found Plaintiff had the RFC to:

> lift or carry up to fifteen pounds occasionally and lift or carry up to ten pounds frequently. He can stand or walk up to six hours. He can sit for up to six hours, during an eight-hour workday with normal breaks. He would be limited to occasional climbing of ramps or stairs and occasional balancing, stooping, kneeling, crouching, and crawling. He could never climb ladders, ropes or scaffolds. He can frequently handle and finger objects, bilaterally. He can occasionally have concentrated exposure to operational control of moving machinery and work at unprotected heights. He is limited to simple, routine, and repetitive tasks in low-stress jobs that require only occasional decision-making and occasional changes in the work setting. He cannot perform fast production rate or pace work. He can occasionally interact with the public and coworkers. He can respond appropriately to supervision.

---

points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

(*Id.* at 26.) At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 29.) Finally, at step five, the ALJ found there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform such as hand packager, photo finisher, and garment folder. (*Id.* at 30.) Consequently, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the decision date. (*Id.* at 30-31.)

## IV.    ISSUES AND ANALYSIS

Plaintiff raises four issues in his brief. (Docket Entry 12.) First, Plaintiff alleges that the ALJ failed to consider all medical and vocational evidence of record, thereby committing prejudicial error. (*Id.* at 6-7.) Second, Plaintiff argues the ALJ erred by giving "too little weight to the opinions of Plaintiff's treating physicians. (*Id.* at 4-6.) Third, Plaintiff claims that the ALJ erred in her credibility determination, therefore the RFC she formulated is not supported by substantial evidence. (*Id.* at 7-10.) Fourth, Plaintiff argues that the ALJ improperly relied on the Medical-Vocational Guidelines to find Plaintiff not disabled. (*Id.* at 10-11.) For the following reasons, these objections lack merit.

### A.    The ALJ Considered the Entire Record.

Plaintiff argues that the ALJ "committed prejudicial error by not considering all of the medical and vocational evidence." (Docket Entry 12 at 6-7.) Specifically, Plaintiff argues that the ALJ failed to address hospital records and a corresponding diagnosis of bipolar disorder from late 2005, some five years prior to the alleged onset date. (*Id.*) Plaintiff

contends this evidence shows that Plaintiff's bipolar diagnosis was "more than a non-medically determinable impairment," and therefore the ALJ's determination was not supported by substantial evidence. (*Id.*)

At the outset, the Court notes that the ALJ's decision indicates that she considered the entire record. (Tr. 21-31.) In fact, in her decision the ALJ repeatedly states that she considered the entire record. (*Id.*) Specifically, the ALJ issued her decision "[a]fter careful consideration of all the evidence" (*id.* at 21) and "[a]fter careful consideration of the entire record" (*id.* at 23, 26). The Court is entitled to rely on these representations absent a compelling reason to the contrary. *See Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, *6 (W.D.N.C. Nov. 18, 2010) (unpublished), *report and recommendation adopted* 2011 WL 52865 (W.D.N.C. Jan. 07, 2011) (citing *Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir.1991) (concluding that because the ALJ stated that he considered the entire record in making his decision, the court could reject the claim that the claimant's wife's testimony was not considered)).

Relying, then, on the ALJ's representation that she considered the entire record, including the 2005 hospital records, the question becomes whether the ALJ's failure to explicitly discuss them constitutes harmful error. The undersigned finds that it does not.

The weight of authority holds that an ALJ need not provide a written evaluation for each document in the record. *See Brittain v. Sullivan*, 956 F.2d 1162 (Table), No. 91–1132, 1992 WL 44817, *6 (4th Cir. March 11, 1992) (unpublished) ("An ALJ need not comment on all evidence submitted."); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *see also N.L.R.B. v. Beverly Enters.–Mass.*, 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without

directly addressing in his written decision every piece of evidence submitted by a party."); *Malloy v. Colvin*, No. 1:10CV420, 2013 WL 2147681, at *6 (M.D.N.C. May 16, 2013), *report and recommendation adopted* slip op., July 10, 2013). *Mellon v. Astrue*, No. 4:08–2110–MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) (unpublished) ("[I]t is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision."); *Brewer v. Astrue*, No. 7:07–CV–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct 21, 2008) (unpublished) ("While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.").

Although not settled by the Fourth Circuit, some courts have found that an ALJ's failure to mention medical evidence that predated the alleged onset date was error, particularly where that evidence involved the same impairments claimant was asserting as a basis of disability. *See Pilcher v. Colvin*, No. 5:14-CV-191-RJC, 2016 WL 1048071, at *4 (W.D.N.C. Mar. 16, 2016) (unpublished); *Marsh v. Colvin*, 792 F.3d 1170 (9th Cir. 2015); *Kish v. Astrue*, No. 10-CV-225-WDS, 2012 WL 996964, at *10 (S.D. Ill. Mar. 23, 2012). However, other courts have found that evidence that predates the alleged onset date is of limited relevance, and need not even be considered. *See Graley v. Colvin*, No. 3:14-CV-25277, 2015 WL 5773162, at *6 (S.D.W. Va. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 5722810 (S.D.W. Va. Sept. 29, 2015) (citing *Gullace v. Astrue*, 1:11CV0755 TSE/JFA, 2012 WL 691554, at *15 & n.18 (E.D. Va. Feb. 13, 2012) (unpublished), *report and recommendation adopted,* 2012 WL 688488

(Mar. 2, 2012) (unpublished). *E.g., Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir.2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). *See also McCormick v. Astrue,* No. 08–450–JJF, 2010 WL 1740712, at *6 (D. Del. April 30, 2010) (holding that the ALJ had not erred in failing to consider a GAF score of 42 because that score had been assessed eleven months prior to the alleged date of onset). Where evidence is not relevant to the decision, and thus would not affect the outcome, any failure to consider or specifically mention such evidence is harmless. *Robinson v. Colvin*, No. 4:13-CV-00823-DCN, 2014 WL 4954709, at *4 (D.S.C. Sept. 29, 2014) (unpublished) (holding that the ALJ's failure to consider a medical opinion in his RFC determination was harmless because remand would not affect the outcome and thus would "amount[] to little more than an empty exercise") (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); *Austin v. Astrue*, No. CIV. A. 7:06CV00622, 2007 WL 3070601, at *6 (W.D. Va. Oct. 18, 2007) (unpublished) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error")).

Here, the ALJ considered Plaintiff's bipolar disorder. (Tr. 25.) She concluded that it was a non-medically determinable impairment, in part, because Plaintiff had "a rule-out diagnosis from a clinical social worker, but not a diagnosis from a psychiatrist (or other acceptable medical source)." (*Id.* at 25 *referencing* Tr. 397-412.) The ALJ did not specifically

address Plaintiff's 2005 hospital records, which contained a discharge diagnosis of bipoar disorder by Dr. Jeffrey B. Warren. (*Id.* at 649-50, 653.) However, as explained below, this failure is harmless.

The Court finds that any failure by the ALJ to mention Plaintiff's 2005 hospital records is harmless because the records are of limited relevance. First, "a diagnosis alone, without related functional loss, is insufficient to establish a disability." *Gibbs v. Colvin*, No. 4:15-CV-00053-RN, 2015 WL 9093773, at \*4 (E.D.N.C. Dec. 16, 2015) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). The 2005 records indicated a variety of symptoms, but no specific limitations to Plaintiff's functional capacity. (Tr. 631-658.) Therefore, Plaintiff's argument that his bipolar disorder, in concert with his personality disorder and physical impairments, directs a finding of disability is not legally correct.

Second, the ALJ also cited other substantial evidence to support her conclusion that Plaintiff's bipolar was a non-medically determinable impairment: the brevity of Plaintiff's treatment for mental health impairments during the relevant period, lasting only from May to June, 2012. (*Id.* at 397-412.) The Court notes that this limited treatment occurred over six years after his 2005 diagnosis, yet the record reflects no treatment of any kind for Plaintiff's mental impairments in the interim. Moreover, Plaintiff's treatment in 2005 was similarly brief. (*Id.* at 631-658.) Finally, when Plaintiff did seek treatment in 2012, he was not diagnosed with bipolar disorder, but rather with antisocial personality disorder. (*Id.* 497-412.) Even in light of the 2005 records, there is a "paucity of evidence supporting his claim" that his bipolar disorder was any more than a non-medically determinable impairment. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001). For these reasons, the Court concludes that the ALJ's mention

of Plaintiff's 2005 diagnosis would not have affected the outcome, and thus remand would be an empty exercise. Therefore, any failure to mention these records is harmless. *Robinson*, 2014 WL 4954709, at *4.

In sum, the ALJ considered the 2005 hospital records, which she may or may not have been required to do because they predated the relevant period by five years. Having considered them, she likely had no duty to specifically address them in her decision. However, even if she should have addressed the 2005 hospital records because they related to the same condition Plaintiff alleged in his application for disability, the lack of follow up, a confirmation diagnosis, or treatment for that condition within the relevant period suggests they were of little relevance. A discussion of this evidence would not affect the outcome of the matter, thus any error is harmless. Therefore, no error as to this evidence warrants remand.

**B.     The ALJ Properly Weighed the Opinion Evidence.**

Plaintiff alleges that the ALJ erred in giving too little weight to Plaintiff's treating physicians, in particular Dr. Chiu and Dr. Tooke. (*Id.* at 4-6.) Plaintiff's argument requires the Court to consider whether the ALJ evaluated Dr. Millet's medical opinion in accordance with the treating physician rule. 20 C.F.R.§§ 404.1527(c)(2), 416.927(c). The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. *Id.* The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. *Id.* The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as

9

subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4).[3] "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. When declining to accord a treating source controlling weight, an ALJ must articulate "good reasons" for doing so. C.F.R. §§ 404.1527(c), 416.927(c).

In the matter before us, Dr. Jenyung Andy Chiu indicated Plaintiff could return to work, but instructed him not to engage in any lifting. (Tr. 24 *referencing* Tr. 667.) Dr. Chui gave Plaintiff this instruction on June 12, 2014 (*id.*), roughly five weeks after Plaintiff was diagnosed with a heart attack and congestive heart failure and underwent a cardiac catherization and revascularization (*id. referencing* Tr. 618-19). Dr. Chiu's June 12, 2014 treatment notes also indicated that Plaintiff was "'doing fairly well,' but that he was 'still fatigued with activity.'" (*Id. referencing* Tr. 667.) The ALJ summarized Dr. Chiu's subsequent treatment notes:

> On September 19, [2014,] Dr. Chiu noted [Plaintiff] had been treated at the hospital for light-headedness and chest pain, but that he was feeling better. He also noted [Plaintiff's] lightheadedness had improved with adjustments to his medications. He further noted [Plaintiff's] chest pain was minimal and rare. On November 18, Dr. Chiu noted that

---

[3] SSR 96-2p provides that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling 96-2p, *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, 1996 WL 374188, at *1 (July 2, 1996).

> [Plaintiff's] ejection fraction was 45%. He also noted that
> [Plaintiff's] chest pain was "[v]ery rare," and that [Plaintiff] would
> continue with the same medications.

(*Id.* at 28 *referencing* Tr. 663, 660.)

The ALJ gave good reasons for declining to accord Dr. Chiu's instruction great weight: the ALJ found that Dr. Chiu's restriction was not intended to be permanent. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); *Carroll v. Colvin*, No. 7:14-CV-173-RJ, 2015 WL 5737625, at *12 (E.D.N.C. Sept. 30, 2015) ("Even if the limitations do constitute medical opinions under the regulations, there is no failure to weigh them where they are temporary in nature.") (citing *Lamb v. Astrue*, No. 3:07–CV–789, 2008 WL 4890580, at *4 (E .D.Va. Nov. 12, 2008) (unpublished) (determining that the ALJ did not err in failing to weigh a temporary work limitation which was to last six months from the date of onset where that opinion was consistent with other record evidence as to the claimant's current condition and where that limitation was only temporary in nature)). Thus, if the restriction was not intended to be permanent, the ALJ need not have even weighed, let alone given great weight to, Dr. Chiu's instruction. *Id.* The question then becomes whether substantial evidence supports the ALJ's conclusion that the limitation was intended to be temporary. The undersigned finds that it does.

Substantial evidence supports the ALJ's conclusion that Dr. Chiu's instruction was not intended to be permanent for three reasons. First, context suggests that it was temporary because the instruction was given following a specific medical procedure, and Plaintiff was

instructed to return for a follow-up evaluation three months later. (Tr. 24 *referencing* Tr. 667);
*see Carroll*, 2015 WL 5737625, at *12 (finding context suggested that a limitation was temporary
where it was imposed after a specific medical procedure with instructions to follow up).

Second, the restriction conflicted with evidence that, based on Plaintiff's improvement
over time, Plaintiff's heart surgery had been successful. (Tr. 27-28; e.g., 665-66, 670, 663,
660.) The ALJ noted that on August 6, 2014, Plaintiff reported that he continued to
experience chest pain. (*Id. refencing* 665-66.) Nevertheless, Dr. Al-Khori's treatment notes
indicated that Plaintiff "did not have symptoms or signs of congestive heart failure, and . . .
had not used any of his nitroglycerin, a medication that is used to treat chest pain." (*Id.*)
Similarly, on September 8, Plaintiff reported to the hospital after chest pain during cardiac
rehabilitation. (*Id. referencing* Tr. 670-71.) The treating physician and Dr. Chiu remarked that
Plaintiff's symptoms were "quite expected" and not medically significant. (*Id.*) In addition,
as noted above, Dr. Chiu indicated that as of on September 19, 2014, Plaintiff's chest pain was
minimal and rare; by November 18, 2014, Plaintiff's chest pain was "very rare." (*Id. referencing*
663, 660.)

Finally, as the last records above demonstrate, after the initial instruction on June 12,
2014, Dr. Chiu never renewed any objections to or expressed additional concerns about
Plaintiff's ability to lift. *Ferrell v. Astrue*, No. 3:11-CV-00503, 2012 WL 4378131, at *13
(S.D.W. Va. June 22, 2012) (unpublished) ("The [Commissioner] is entitled to rely not only on
what the record says, but also on what it does not say." (alteration in the original)), *report and
recommendation adopted*, 2012 WL 4378126 (S.D.W. Va. Sept. 25, 2012) (citing *Dumas v. Schweiker*,
712 F.2d 1545, 1553 (2d Cir.1983); *Bostic v. Astrue*, 2011 WL 3667219, at *5 (W.D.N.C. July

22, 2011) (holding same)).  Although a physician need not repeatedly instruct a claimant as to limitations, the context provides substantial evidence that absent additional instructions in this regard, Dr. Chiu's instruction to refrain from any lifting was not intended to be permanent. Thus the ALJ's decision to accord this opinion little weight to Dr. Chiu's instruction not engage in any lifting was proper.

Plaintiff also contends that, with respect to Plaintiff's "orthop[]edic and neurological treating physicians," the ALJ "only selectively discussed their evidence and did not continue beyond the initial request to return to work dates." (Docket Entry 12 at 5.) Plaintiff refers with specificity only to Plaintiff's June, 2012 appointment with Dr. Michael T. Tooke, at which Dr. Tooke ordered a new MRI and opined that "Plaintiff's restrictions may be permanent." (*Id. referencing* Tr. 506-510.)  This argument, too, lacks merit.

The ALJ's decision demonstrates that she properly considered and weighed Dr. Tooke's opinion.  (Tr. 24, 28.)  Dr. Tooke's notes from the June, 2012 appointment indicate that he opined Plaintiff could return to "light duty work," involving "[n]o lifting greater than fifteen pounds" (*id.* at 28 *referencing* Tr. 509) with "[n]o repetitious bending/stopping/squatting" (*id.* at 509).  The RFC limited Plaintiff to lifting no more than fifteen pounds with only occasional stooping, kneeling, crouching, and crawling.  (*Id.* at 26.) The ALJ further noted that that Dr. Ernesto M. Botero, a neurologist whom Plaintiff visited for a second opinion, reviewed the MRI Dr. Tooke had ordered.  Dr. Botero "diagnosed Plaintiff with degenerative disc disease at L3-L4 and L4-L5 'with a question of left paracentral protrusion.'"  (*Id.* at 24 *referencing* 487-506, 473-74.)  The ALJ found that these conditions constituted severe impairments.  (*Id.* at 23.)  Although the ALJ gave only partial weight to

Dr. Tooke's opinion, she did so because "the evidence support[ed] *additional* restrictions beyond lifting." (*Id.* at 28 (emphasis added).) The ALJ therefore gave a good reason for giving less than controlling weight to Dr. Tooke's opinion: it was "inconsistent with other substantial evidence" that Plaintiff had additional limitations. *Craig*, 76 F.3d at 590.

As discussed in detail above, that the ALJ's did not specifically address Dr. Tooke's statement that "[w]e may be facing an issue of permanent restriction . . ." does not suggest that she ignored relevant evidence. The ALJ noted that in June, 2012, Dr. Tooke found that Plaintiff had "regressed in terms of his symptomology," which indicates that the ALJ considered evidence from the appointment Plaintiff specifically referenced in his argument. (Tr. 24.) The ALJ's decision thus demonstrates that she considered Dr. Tooke's findings and opinions, and substantial evidence supports her decision to afford those opinions only partial weight.

Plaintiff does not explicitly reference any other opinions that were improperly weighed. (Docket Entry 12 at 4-6.) The Court will therefore refrain from a lengthy analysis of conclusions not specifically cited as error. The above demonstrates that the ALJ gave good reasons, and provided substantial evidence, for her decisions to accord Dr. Chiu and Dr. Tooke's opinions less than controlling weight. Thus the ALJ appropriately considered the factors set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c), and the undersigned has found no evidence to the contrary.

### C. The ALJ's credibility determination and RFC findings are supported by substantial evidence.

Plaintiff next argues that the ALJ misconstrued Plaintiff's testimony leading to a faulty credibility and RFC determination. (Docket Entry 12 at 7-10.) Plaintiff alleges that as a result, the ALJ disregarded the Vocational Expert's ("VE") testimony that a person like Plaintiff could not work. (*Id.* at 8-9.) As explained below, the Court concludes that the ALJ did not materially err in her credibility analysis, her RFC determination is supported by substantial evidence, and she did not improperly disregard relevant VE testimony.

RFC measures the most a claimant can do despite any physical and mental limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); 20 C.F.R. §§ 404.1520, 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1520, 416.945(b)–(e). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). *See* 20 C.F.R. §§ 404.1520, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. §§ 404.1520, 416.969.

*Craig v. Chater* provides a two-part test for evaluating a claimant's statements about symptoms. 76 F.3d 585. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 589 (citing 20 C.F.R. §§ 404.1529(b), 416.929(b)).

If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-96. While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them insofar as they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and heard the claimant's testimony and observed his demeanor, the ALJ's credibility determination is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).[4]

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (Tr. 27.) Thus, the ALJ performed the first step of the *Craig* analysis. Next, the ALJ performed step two of the analysis, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely

---

[4] Effective March 28, 2016, *see Social Security Ruling* 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original Ruling), the Social Security Administration superseded SSR 96-7p with Social Security Ruling 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." *Id.* The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," *id.*, and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," *id.* at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16-3p (*see* Tr. 92), and, because SSR 16-3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, *see Bagliere v. Colvin*, No. 1:16CV109, 2017 WL 318834, at *4-8 (M.D.N.C. Jan. 23, 2017) (unpublished), *recommendation adopted*, slip op. (M.D.N.C. Feb. 23, 2017) (unpublished); *see also Hose v. Colvin*, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished), *recommendation adopted*, slip op. (M.D.N.C. May 10, 2016) (unpublished).

credible for the reasons explained in [her] decision." *(Id.)*

The ALJ's step-two credibility analysis is supported by substantial evidence. As described below, the ALJ methodically considered each of Plaintiff's impairments: his history of heart problems, his back pain, and his mental impairments. *(Id.* at 27-28.) First, the ALJ found that despite Plaintiff's reports of chest pain, his testimony "was inconsistent with his medical history, which show[ed] that his heart surgery was successful." *(Id.* at 27.) As described in more detail above, the evidence showed that on August 6, 2014, Plaintiff did not have symptoms or signs of congestive heart failure, and he had not used any of his nitroglycerin. *(Id.* at Tr. 27, *referencing* Tr. 665-66.) On September 8, 2014, Plaintiff experienced a non-medically significant heart abnormality. *(Id.* at 27-28, *referencing* Tr. 670-71.) By November 18, 2014, Plaintiff's chest pain was "very rare." *(Id. referencing* Tr. 660.) The ALJ found this medical evidence at odds with Plaintiff's testimony that he was vulnerable to significant chest pain.

As noted above, although Dr. Chiu initially instructed Plaintiff to refrain from any lifting, the ALJ reasonably interpreted this instruction as temporary. *(Id.* at 24, 28 *referencing* Tr. 667.) No other physicians who treated Plaintiff for his heart-related impairments gave similar instructions. Nevertheless, as will be described below, the RFC significantly limited Plaintiff's ability to lift based on Plaintiff's back pain.

The ALJ next considered Plaintiff's allegations of back pain, and found them inconsistent with the opinion evidence and Plaintiff's medical history. *(Id.)* Despite Plaintiff's claims that his back pain was disabling, the ALJ noted that the record did not include any treatment by orthopedic physicians, neurologists, or other specialists. *Johnson v. Barnhart,*

434 F.3d 650, 658 (4th Cir. 2005) (finding the ALJ properly considered claimant's failure to seek treatment from a specialist for severe hand impairment); *Ferrell*, No. 3:11–CV–00503, 2012 WL 4378131, at *13 (S.D.W. Va. June 22, 2012) (stating that the ALJ "is entitled to rely not only on what the record says, but also on what it does not say). Of the physicians from whom Plaintiff did seek treatment, "[n]o physican ha[d] opined that [Paintiff's] back impairment [was] disabling." (Tr. at 28.) Rather, the record showed consistent limitations to light duty work which required Plaintiff to lift nor more than fifteen or twenty pounds. (*Id.* *referencing* Tr. 509, 517, 102.) The ALJ found these opinions and evidence inconsistent with Plaintiff's allegations of disabling back pain. (*Id.*) However, the ALJ included the strictest of the proposed permanent limitations in the RFC. (*Id.* at 26; e.g., 509, 517, 102.)[5]

Finally, the ALJ considered Plaintiff's testimony about his mental impairments. Plaintiff alleged memory problems. (Tr. 26-27.) Plaintiff also testified that he shopped at night to avoid crowds, and did not like to socialize with family and friends. (*Id.* at 27; *e.g.*, 53-54.) He further testified that he was limited in his ability to drive. (Tr. 27; *e.g.*, 49-50.) The ALJ found Plaintiff's testimony not credible because Plaintiff, "who work[ed] as a security guard on a part-time basis, conceded that he could handle the *mental demands* of the job on a

---

[5] Dr. Tooke, Dr. Saullo, and Dr. Madala, all agreed that Plaintiff could work, but limited that work to "light" work or work involved lifting no more than fifteen or twenty pounds. (Tr. 28 *referencing* Tr. 509, 517, 102.) Dr. Tooke and Dr. Saullo also added a limitation of "[n]o repetitious bending/stopping/squatting." (*Id.* at 509, 517.) Dr. Madala opined Plaintiff could stand and/or walk for about six hours in an eight-hour day; sit for about six hours in and eight-hour day; frequently lift and/or carry up to 10 pounds; occasionally lift and/or carry up to 20 pounds; push/pull an unlimited amount except for as opined with regard to his lift/carry restrictions; occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. (*Id.* At 102-03.)

full-time basis." (Tr. 28 (emphasis added); e.g., Tr. 49.)[6] This concession was consistent with the findings of state agency consultant David Gilliand, Psy.D., who opined that Plaintiff could handle the mental demands of full-employment as a security guard. (Tr. 29 *referencing* Tr. 108-120.) Plaintiff further testified that his "job help[ed] control his bipolar disorder because he is able to be around people and understand them." (*Id.* at 27; *e.g.*, Tr. 49.) The ALJ also found that Plaintiff's "very brief" mental health treatment history was inconsistent with Plaintiff's allegations. (Tr. 28.)

Based on the above, the ALJ concluded that the record indicated only mild restrictions in activities of daily living and moderate difficulties in social functioning because Plaintiff's activities of daily living included shopping in stores and driving, as well the part-time work noted above. (*Id.* at 25-26.) The ALJ concluded that Plaintiff's memory problems amounted to moderate difficulties with concentration, persistence and pace. (*Id.* at 26.) The ALJ considered Plaintiff's testimony and the medical evidence in formulating a mental RFC that limited Plaintiff to only simple, routine, and repetitive tasks in low-stress jobs that require only occasional decision-making and only occasional changes in the work setting. (*Id.*) The ALJ further concluded that Plaintiff could not perform fast production rate or pace work, and

---

[6] Plaintiff argues that the ALJ "focused her denial of benefits on the assumption" that Plaintiff could perform his part-time position as a security on a full time basis. (Docket Entry 12 at 9 *referencing* Tr. 26-28.) Plaintiff contends, "[t]he actual evidence in the record notes that the Plaintiff believed his memory could support a full time position in this capacity but that his body could not due the physical stress of waling the required distance and the increasing musculoskeletal pain symptoms." (Id. *referencing* Tr. 49.) The ALJ decision makes clear that Plaintiff testified only that he could handle the *mental* demands of the job full-time. Further, the ALJ used Plaintiff's testimony regarding his ability to perform his part-time security job full-time only to partially discredit Plaintiff's testimony as to the extent of his mental impairment and as support for the opinion of state agency psychological consultant Dr. Gilliand. This testimony was not used to discredit Plaintiff's testimony as to his physical condition.

although Plaintiff could only occasionally interact with the public and coworkers, he could respond appropriately to supervision. (*Id.*) The ALJ thus cited substantial evidence to support both her credibility determination and her mental RFC.

Plaintiff contends that the ALJ improperly failed to consider or discuss certain VE testimony. (Docket Entry 12 at 8-9.) In particular, the VE testified that no jobs existed in the national economy for a hypothetical individual limited to a limited range of sedentary work who would miss three or more days per month due to depression, anxiety, and related symptoms. (*Id. referencing* Tr. 65-66.) However, this hypothetical assumed the ALJ fully credited Plaintiff's testimony as to the intensity, persistence, and limiting effects of his alleged symptoms. (*Id.* at 65-66.) As detailed above, the ALJ did *not* fully credit Plaintiff's testimony and her credibility determination is supported by substantial evidence. The ALJ had no need to address the VE's responses to hypotheticals that included additional limitations.

The above demonstrates that the ALJ properly determined Plaintiff's credibility, and considered Plaintiff's testimony as well as the medical evidence in formulating an appropriate RFC. The ALJ's credibility determination and RFC finding are thus supported by substantial evidence, and the undersigned can find no reason to disturb them.

### D. The ALJ Did Not Err in Using the Grids as a Framework.

Last, Plaintiff contends that the ALJ improperly used Medical–Vocational Guidelines (the "grids") to direct a conclusion of not disabled. (Docket Entry 12 at 10-11.) This argument is unavailing. Where a claimant suffers from non-exertional impairments,[7] the

---

[7] A non-exertional impairment is an impairment "not manifested by a loss of strength or other physical abilities." *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir.1983.)

Commissioner may not rely exclusively on the grids and instead must present evidence from a vocational expert that a particular claimant retains the ability to perform work that exists in the national economy. *Grant*, 699 F.2d at 192. However, the Fourth Circuit has made clear that not all non-exertional conditions or maladies rise to the level of "non-exertional impairments," such that they would preclude the use of the grids. *Smith*, 719 F.2d at 725. Where non-exertional conditions do not "significantly affect [Plaintiff's] ability to perform work of which he was exertionally capable," they are not considered impairments for purposes of determining whether jobs that Plaintiff can perform exist in the national economy, and the ALJ may deny benefits "based upon a straightforward application of the grids," without testimony from a vocational expert. *Id.* at 724. Indeed, the ALJ may rely exclusively on the grids where the ALJ has properly decided, as an issue of fact, that Plaintiff's non-exertional condition does not affect her capacity for work. *Stratton v. U.S. Dep't of Health & Human Servs.*, 884 F.2d 1390 (Table), No. 88–1614, 1989 WL 100814, at *3 (4th Cir. July 24, 1989) (unpublished).

Here, despite Plaintiff's arguments to the contrary, the ALJ did not apply the grids directly. Instead, the ALJ relied on 202.18 and Rule 202.21 of the grids as a "framework for decision making" (Tr. 30) in tandem with the testimony of a VE, who concluded that a claimant like Plaintiff could perform the unskilled light jobs of hand packager, photo finisher, and garment folder (*id.* at 383). Accordingly, the ALJ properly concluded that Plaintiff was not disabled under the Act. (*Id.* at 30.) Plaintiff contends that a strict application of Rule 202.18 directs a finding of disability. (Docket Entry 12 at 11.) In fact, a strict application

of Rules 202.18 and 202.21 directs a result of not disabled.   See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rules 202.18 and 202.21.   Substantial evidence thus supports the ALJ's step-five finding.

## V.    CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.   Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings Reversing the Decision of the Commissioner (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED,** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

February ⎯⎯, 2018
Durham, North Carolina